If the late Speaker Tip O'Neill was right that all politics are local, then maybe the vitality of free speech is sustained in our small town halls. In fact, maybe the founders were concerned more about abuses by constables than kings. This may very well be a small case, but it's a case built on big and fundamental principles of the First Amendment. Do I get this right that the Plaintiffs thought the city had not given them enough law enforcement against their neighbors for letting the dogs run on their lawn, and then the city cited the neighbors, and then each one complained about the other one's offenses, and offenses were cited when they violated things. The Plaintiff was a regular speaker at the City Council, so one time the Sheriff said, OK, Mr. Weaver, front and center, and that's basically the case? No, I don't agree with your rendition of it, Your Honor. OK, tell me. That's the way it looked to me. With respect to the dog issues that you referenced, what Mr. Weaver's and now Mrs. Weaver's claims are is that because they complained about the dog situation too much to the Sheriff, because they petitioned the government for redress on that, is that the Sheriff became angry and irritated at them, made a threat that Mr. Weaver had better wear a bulletproof vest, and then when Mr. Weaver went to the City Council and complained that the Sheriff had made that statement, and in addition to the fact that that ordinance was not being enforced, then a whole series of retaliations commenced. So the second one is... Well, that's the sum and substance of your First Amendment claim? No, that is not. That's just the first part of the story that the First Amendment claim is based on. The bulletproof vest was he wants to do a ride-along with the police, and the police all wear bulletproof vests, and the policeman says you have to wear a bulletproof vest. Well, that's one rendition of the facts, but that's a disputed fact. What's the alternative rendition? The alternative rendition is that Mr. Weaver had become an irritant, particularly as a new resident, to the chief of police in this small town, who didn't want to hear or receive any more calls about dogs running at large and demanding... So you're suggesting it was rational to take this as a threat that the police department would shoot your client? No, I don't think that the threat was that the police department would shoot the client, but when the chief of police, and you don't get this on the paper, although you get the words, and Mr. Weaver comes in and is complaining and asks about, you know, you have a ride-along program, and the chief turns to him angry and says, yeah, and you'd better wear a bulletproof vest in a small town where there's no reason to believe that anybody was going to be shooting him except for the fact that perhaps neighbors were becoming irritated. Keep in mind that the only other citizens who have ever incurred the wrath of this town and this sheriff's department as set out by one of the police officers, Mr. Eshman, was a citizen who had complaints against the police department and began videotaping what the police department was doing, where they were going on their calls, how they were spending their time, how long the lunch hours were that they were taking, and that is the only other person who had incurred the wrath, a person who was trying... Where does the First Amendment come in? The First Amendment comes in in several respects in this case. First, the right to petition and to go to government officials and say that you ought to be doing a better job in enforcing the nuisance ordinance. In what way was that interfered with? The fact that you don't get a sympathetic... The right to petition doesn't guarantee you a sympathetic audience. Well, you know, I agree with that. It rather implies the opposite, doesn't it? I don't think it implies the opposite. When the police get mad at you because you come in there and seek that enforcement... Why can't they get mad? Well, see, that's a... I mean, any time somebody irritates other people, they tend to get mad at them, but I'm having trouble seeing that as retaliation. I don't understand why they can't get mad, and I can't see where they did anything but get a little annoyed with them. Well, and that's kind of the... Because I understand the sentiments and the... Educate me. Show me why I'm wrong. Well, you're wrong because you're not seeing the big picture, with all due respect. You're wrong for the same reasons that the plaintiffs first lost on hostile sex environment claims, is because the question would be, isolating these incidents, what's wrong with he said that you were pretty? What's wrong with that you had a nice figure? What's wrong with he once brushed up against you? And what we decided as a society is that when it comes to governmental power, you have to see the big picture. You have to look at all of these put together. You want us to issue an opinion that says the First Amendment guarantees your right to polite and pleasant respondence when you complain to your government officials? No, I don't want that. That's not... What are you talking about then? Isn't there a corollary to Tip O'Neill's notion that politics is local? That it's also... Sometimes it's quite uncivil as well. I think it can be. And the question is... But isn't that part of the amendment? Isn't that why we have an amendment? Is part of... That's exactly right. And I agree that there has to be debate. And the debate itself can in fact even by the government officials be uncivil. But it can't go so far as yelling at a citizen because he's come in and complained. Following that up by a city hall meeting in which Mr. Weaver wanted to raise the issue of whether government funds were being misspent. It's an open mic. The record is crystal clear. Anybody can come up and use their three minutes to say anything they want. And when he gets a couple of lines into it about the misappropriation of fund under a police levy to have the mayor say, No, no, no, no. We're not going to hear that. We resent that. And shut down his open mic time. When he then tries... Mr. Geyer, pardon me. I mean, I don't want to interfere with your First Amendment, right? But if I may... It would help me to focus on what claim you're making. Is there any decision in this circuit or in the Supreme Court or indeed in any other court of appeals that suggests that anything you've described presents a First Amendment issue? I'm just not... I don't know where the claim is. Not directly. But in analogous situations, as I was just giving you what began as Title VII cases on hostile workers... Title VII isn't going to get us anywhere. What's your best First Amendment case? What case do you want us to read before we decide the issue? First Amendment case. Best First Amendment case would be the Allen and Iranomon case which is cited throughout. The Colza-Salter v. Salem case, Ninth Circuit case 2003 that follows the decision in this case and the Freevetch v. Multnomah County case, District of Oregon of 2000. Those would be the cases I would ask you to focus on. You have a minute and a half. Do you care to retain that to rebut the other side? I will. Thank you. You bet. We'll hear from the other side. I praise the Court. My name is Bruce Mallory representing the defendants, respondents. Please keep your voice up, sir. Just cutting to the chase, on the dogs at large the record shows that there were more citations issued because of the plaintiff's complaints than by anyone else's. They got more service than anyone else. And there was not a threat of a vest in connection with their concerns about dog at large. It was solely in the context of the ride-alongs and that was always raised by Mr. Weaver. Thirdly, the conversations at the city council meetings the mayor is certainly entitled to exercise his First Amendment right when a citizen is suggesting that there's been misuse or misappropriation of funds. The worst thing the mayor said was he took strong exception to that. There's no causal relationship between any of these goings-on involving the city and any exercise of free speech any protected free speech. Each one of the events that The claim I heard that was closest to one was everybody gets three minutes to say whatever they want. When I started saying that there was misapplication of funds my mic was turned off, my three minutes was taken away. First of all, I don't think the record supports that at all. The strongest you get... What do you mean you don't think the record supports that? That the mic was turned off. There's nothing in the record that says the mic was turned off? No. No, there isn't. Nothing from Mr. Weaver that says they turned off the mic? Nothing at all? Nothing from them, no. Okay. Nothing. No place. The strongest you get any place is that there was an interruption and there was with the mayor's comment about taking strong exception to the suggestion that there's been misuse of funds and the suggestion that there was an interruption because the topic had already been addressed before and I think the mayor said something like on that issue your attorney will need to talk to ours or something about litigation or the prospect of litigation but there was never... and there's certain... that was generally applied across the board equally but the record is devoid of anything indicating that Mr. Weaver was cut off or not entitled to make a presentation with one minor exception and that is there might have been something about a topic that had been discussed before and I think city councils the mayor formed a government that could have a right in the interest of efficiency and time constraints to have some type of constraints but there was never a total cut off and the record is replete with references to the fact that Mr. Weaver was very vocal he would speak I think eight times out of ten that he went to council meetings that he consistently presented to the council as much as he ever did in the past and there's no indication that his speech was chilled in fact I know that that's not the test the test is whether it would chill free speech of a reasonable person but I guess I've answered your question Judge Levy mentioned the fence the city never had a great interest in enforcing the fence ordinances and so on it didn't and the only reason it did in this case was because Mr. Weaver himself complained about his neighbor Do you care to address the retaliation claim? Well if you could be more specific in a matter of speaking your honor they're saying that everything that occurred whether it's these patrols, fence The patrols for example he suggests that the patrols were instituted not to protect the neighborhood but to intimidate him He's saying all these things are a form of retaliation but to zero in on the drive-bys I think that's an easy one first of all I don't like the connotation drive-by but I call it patrol be that as it may we know that there have been many complaints about dogs at large the police patrol the city streets the evidence is they patrol all the city streets the evidence is that the chief wanted his officers to patrol every street at least twice Do I have this right the plaintiff keeps calling the police and saying my neighbor's dogs are running onto my lawn they patrol the street they drive within this very slow 15 mile an hour speed limit on the street and then he complains I feel harassed because police are driving up and down the street That's it in a nutshell they wanted to drive every street at least twice a shift the chief wanted to do the same by example or otherwise and there is a low rate of a posted speed limit of 15 or 20 miles an hour there was a problem on Cora Street which is very close to Train Street where the plaintiffs reside there's the dogs at large there is no evidence that this street was patrolled any different than any other street in the city you wanted the cops to watch for the dogs pardon me you wanted the police there he would think so he was always saying that there's insufficient enforcement and no one's there to see the dogs running at large and there's no privacy expectation because you know the house is in plain sight there's no evidence at all in this record that that street that the plaintiffs reside on was patrolled or treated any differently than any other street certainly under the same circumstances do you have anything else you want to tell us counsel just answer any questions that I might that you might have thank you very much thank you I'm not able to find any evidence that the microphone was turned off we never said the microphone was turned off it was it was your colleague and I'm sorry I don't know the judge's name Kleinfeld Judge Kleinfeld I'm so sorry but it was it was Judge Kleinfeld who who used the term cut the mic off he was we never said that that was simply a mouthful so he was allowed to speak no he was stopped from speaking how he was told that he could not address that subject any further he had no litigation pending he had made no legal so you're asking us to write an opinion that says if somebody gets up to speak a person controlling the hearing has no authority to stop that person from speaking that they may very well have the authority to stop them from speaking but you can't do it because of the content of the speech when you have an open mic policy we can't allow city officials to simply say we have an open mic but if you say if you raise an issue as to whether or not we're committing fraud no you can't do that when next when I mean who do they want to hear from if I could just in the 30 seconds there were just a couple of exhibits I really wanted to call your attention to the first is the photograph of the fence and that is found at ER 213 and that is a photograph of a small decorative fence that my client was suespante the only case that the city has ever cited anybody on a fence is this decorative split rail fence he starts getting threatening letters because it is allegedly four inches too high and while they tried to deny that this was suespante I want to call your attention to exhibit at ER 202 their letters saying that we noticed the side yard fence was too high this enforcement against this small decorative fence took place within seven days of him going to the ER and actually the drive-bys that are being referenced in the record he does not complain about drive-bys in the era when the dog issue when the dog enforcement was not satisfactory to him a municipal judge a contract municipal judge not a hired city official finally levied fines against the offender and that was brought to a close the drive-bys began only after when the dog issue was resolved this is clear in the record the drive-bys began after he makes complaints about the misallocation of the levy funds and the selective enforcement on the fence thank you counsel the case just argued is ordered submitted the next case for oral argument is Kutz vs. Barnhart 3     0 0 0 0 0 0 0 0 0 0
judges: Trott, Kleinfeld, Pollak